IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| | : Case No. 2:15-CR-00081 |
| v. | : |
| | : JUDGE ALGENON L. MARBLEY |
| THOMAS G. THOMPSON, | : |
| Defendant. | : |

### ORDER

This matter is before the Court on Defendant Thomas G. Thompson's Motion to Terminate Civil Contempt Sanctions in Accordance with the Provisions of 28 U.S.C. § 1826. (Doc. 111.) For the reasons stated below, the Court **DENIES** Defendant's motion.

### I.  BACKGROUND

Defendant Thomas G. Thompson has been held in civil contempt for more than one year for violating a Court order to sit for a debtor's examination and assist the litigants in the civil case No. 06-cv-0292 in identifying and recovering assets, as required by his plea agreement. (Doc. 63 at 5.)[1] The Court held Mr. Thompson in contempt pursuant to its "inherent power to

---

[1] Paragraph 4(a) of the plea agreement provides as follows:

> Defendant agrees to assist the Parties in Case No. 06-CV-0292, and any other party identified by the Court as having an interest, in identifying and recovering assets. Defendant agrees to testify under oath at a proceeding, amounting to a debtor's examination, to identify and recover assets. This examination shall include, but is not limited to, questions regarding the gold strike commemorative coins which were the subject of previous orders in Case No. 06-cv-292. After Defendant answers questions in the debtor's examination, a reasonable time will be permitted for a process amounting to civil discovery to verify answers and trace assets. After the debtor's examination and a reasonale [sic] period of time for discovery, if the government is satisfied that all questions have fully answered [sic], it shall recommend to the Court that the civil contempt be deemed 'cured.' This term shall not bar the Court from adducing and ordering a sentence

1

enforce compliance with [its] lawful orders." (Dec. 16, 2015 Order, Doc. 63 (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). Despite Mr. Thompson's protestations, the Court also found, as a matter of law, that the plea agreement does not limit Mr. Thompson's required cooperation to participation in a debtor's examination. (Doc. 108 at 2-3.) Specifically, the Court found that paragraph 4(a), which requires Mr. Thompson "to assist the Parties in Case No. 06-CV-0292, and any other party identified by the Court as having an interest, in identifying and recovering assets," contemplated, among other things, the signing of a limited power of attorney that allows the government to probe the contents of the Belizean trust.

In light of the Court's civil contempt finding, the Court tolled Mr. Thompson's pending two-year sentence for criminal contempt, ordering him to be incarcerated and to pay a fine of $1,000 per day until he purged himself of the contempt. (*Id.* at 6.) The Court stated that it would assess the status of Mr. Thompson's compliance with the Court order every 60 days. (*Id.* at 5.)

In advance of the June 30, 2017, 60-day hearing, Mr. Thompson filed a Motion to Terminate Civil Contempt Sanctions in Accordance with the Provisions of 28 U.S.C. § 1826 (the "Motion"). (Doc. 111.) Both the government and the Dispatch Printing Company (the "Dispatch") filed oppositions (Docs. 112, 118). Mr. Thompson filed a Motion to Strike the

---

including incarceration in this case for criminal contempt. The government acknowledges that it is the Parties' intention that the identificaion [sic] of property and assets shall proceed as a condition of Defendant's cooperation under the terms of this Agreement and that the determination of whether Defendant has in fact cooperated in this regard shall be made by this Court and only by this Court, consistent with the terms and conditions of this Agreement. Further, the government acknowledges that it is the parties' intention that it is the Parties' intention that any sanctions or consequences arising from Defendant's failure to cooperate in the identification and recovery of assets in Case No. 06-CV-0292 be determined and imposed by this Court as part of the instant proceeding, and only by this Court as part of the instant proceeding. Defendant's submission to any debtor's examination shall not be limited to one hearing or proceeding, but rather, any examination may proceed as part of the instant criminal matter during any period of incarceration and during any term of supervised release and Defendant's failure to comply shall be deemed a material breach of this Agreement[.]

(Doc. 14 at ¶ 4(a) (emphasis added)).

2

Dispatch's opposition (Doc. 117), which the Dispatch and the government both opposed (Docs. 118, 119.)

## I. ANALYSIS

The Court will address first the motion to strike, and then the substance of the motion to terminate Mr. Thompson's contempt.

### A. Motion to Strike

Mr. Thompson moved to strike the Dispatch's opposition on the grounds that the Dispatch is not: (a) a "victim" as defined by the Crime Victims' Rights Act ("CVRA"); or (b) an intended third-party beneficiary of Mr. Thompson's plea agreement with the government. (Doc. 117 at 2.) Mr. Thompson cites no case law or other authority in his motion to strike, harkening back instead to arguments he made in previous filings in this case. (*Id.* at 2-3 (citing Docs. 25, 29).)

The Dispatch and the government oppose, (Doc. 118 at 8; Doc. 119), and the Court has previously rejected Mr. Thompson's argument that the Dispatch is not a "victim," stating that:

> This argument is not well taken. Defendant cites to case law concerning a crime victim's special rights in proceedings against the accused, including the right to be heard at proceedings regarding release, plea, sentencing or parole. The motion pending before this Court does not involve such proceedings. Instead, it involves a request to view certain seized property, a request in which [the Dispatch and the Receiver] undeniably have a pressing interest.

(Doc. 31 at 2.) In the absence of any developments in the case law, this Court finds that there is no basis to alter its prior reasoning. The Motion to Strike is therefore **DENIED.**

### B. Motion to Terminate Contempt

Next, Mr. Thompson argues that he is being held in contempt as a recalcitrant witness per 28 U.S.C. § 1826. Section 1826 provides:

3

> Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—(1) the court proceeding . . . before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

28 U.S.C. § 1826(a). Mr. Thompson has been held for over eighteen months. He argues that the Sixth Circuit's holding in *United States v. Mitchell*, 556 F.2d 371, 385 (6th Cir. 1977) that the statute imposes the 18-month maximum on defendants—as well as non-defendant witnesses—therefore necessitates that this Court release him from contempt. (Doc. 111 at 6.)

The Dispatch Printing Company (the "Dispatch") filed an opposition to Mr. Thompson's motion, arguing: (a) that this Court invoked its inherent authority, not § 1826(a), when holding Mr. Thompson in contempt; and (b) that Mr. Thompson is not a "witness" held in contempt for refusing to provide information at a "proceeding before or ancillary to any court." (Doc. 112.) The plea agreement requires Mr. Thompson not just to provide information, but also to "*assist the Parties*" in "identifying and *recovering* assets" and otherwise to comply with the terms of his plea agreement. (*Id.* at 3 (emphasis added).)

Contrary to Mr. Thompson's arguments, § 1826 does not require his release. First, by its own terms the statute applies only to those witnesses who "refuse without just cause shown to comply with an order of the court to *testify* or *provide other information*." 28 U.S.C. § 1826 (emphasis added). It is true that Congress, through § 1826(a), limited the inherent authority of the courts to hold contumacious witnesses in civil contempt for failing to "produce evidence." *United States v. Mitchell*, 556 F.2d 371, 385 (6th Cir. 1977). But here, the utility of Mr.

4

Thompson's assets as *evidence* is almost beside the point; it is the *economic value* of the treasure that the Court seeks. Mr. Thompson was therefore not merely ordered to testify or provide information. Instead, he was ordered to submit to a debtor's examination and to comply with the terms of his plea agreement—terms, it must be noted, that Mr. Thompson bargained for freely. (*See* Doc. 50).

Mr. Thompson's case is on all fours with *Armstrong v. Guccione*, 470 F.3d 89 (2d Cir. 2006) In *Armstrong*, the Defendant was arrested for operating a large Ponzi scheme, and the court issued an order requiring the Defendant to turn over corporate records and assets including rare coins, gold bars and bullion, and antiquities totaling approximately $16 million to a court-appointed receiver. *Id.* at 93. The Defendant refused to do so. *Id.* Beginning on January 14, 2000, the Defendant was confined at the Metropolitan Correctional Center for disobeying the court's valid order, and was instructed that the confinement would continue "until he either complied with the turnover orders or demonstrated that it would be impossible for him to do so." *Id.* at 95. In an effort to ensure that the confinement was coercive and not punitive, the district court there, as this Court has done, held periodic hearings to discuss the Defendant's willingness to purge himself of his contempt. *Id.* In 2004, the Defendant filed a petition for a writ of habeas corpus, arguing among other things that the district court lacked the authority to keep him incarcerated for civil contempt. *Id.* at 96. The district court eventually denied his petition. *Id.* In 2005, the Defendant appealed to the United States Court of Appeals for the Second Circuit. *Id.*

Before the Second Circuit, the Defendant argued, as Mr. Thompson does here, that the Sixth Circuit's holding in *Mitchell* required his release. *Id.* at 109. The Second Circuit determined that argument was "without merit." *Id.* In so holding, the court noted that the

5

*Mitchell* court "concluded that the furnishing of a voice exemplar constituted providing 'other information' as specified by [28 U.S.C. § 1826(a)], presumably because the voice exemplars were sought for their informational content and had no other value." *Id.* at 109–10 (internal citations omitted) (first citing *United States v. Mitchell*, 556 F. 2d 371 (6th Cir. 1977), then citing *Palmer v. United States*, 530 F. 2d 787, 789 (8th Cir. 1987)). Unlike the *Mitchell* Defendant, the court noted, the Defendant in *Armstrong* refused to obey a command to turn over coins, gold, and antiquities that were "sought not because of any information they might contain, but because they are objects of monetary value that are the property of the corporation in receivership. An order requiring the production of money or valuable property, for the purpose of restoring it to its rightful owner, is not an order to provide 'information,' and does not fall under the terms of § 1826(a)." *Id.* at 110.

When the Second Circuit issued its opinion, the *Armstrong* Defendant had been held in contempt for nearly seven years. Despite that lengthy period of confinement, the court determined that it would continue indefinitely as long as the Defendant continued to refuse to produce the objects of monetary value covered by the district court's order. This Court agrees, and similarly holds that objects of economic value are not covered by § 1826(a) and are therefore not subject to its eighteen-month limitation.

As ever, Mr. Thompson is not without recourse. The Court has repeatedly noted that, as a civil contemnor who is incarcerated to compel compliance with a court order, Mr. Thompson "holds the key to his prison cell: Where defiance leads to the contemnor's incarceration, compliance is his salvation." *Id.* at 92. Until Mr. Thompson complies, he will remain in contempt. His Motion to Terminate Civil Contempt is therefore **DENIED**.

6

IT IS SO ORDERED.

/s/ Algenon L. Marbley
ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE

DATED: November 27, 2017