# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: May 29, 2019

Mr. Russell Stephen Bensing
1360 E. Ninth Street, Suite 600
Cleveland, OH 44114

Ms. Alexis J. Zouhary
Office of the U.S. Attorney
221 E. Fourth Street
Suite 400
Cincinnati, OH 45202

      Re: Case No. 17-4264, *USA v. Thomas Thompson*
           Originating Case No. : 2:15-cr-00081-1

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                     Yours very truly,

                     Deborah S. Hunt, Clerk

                     Cathryn Lovely
                     Deputy Clerk

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0107p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

THOMAS G. THOMPSON,

        *Defendant-Appellant*.

No. 17-4264

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:15-cr-00081-1—Algenon L. Marbley, District Judge.

Argued: December 6, 2018

Decided and Filed: May 29, 2019

Before: MOORE, CLAY, and DONALD, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Russell S. Bensing, Cleveland, Ohio, for Appellant. Alexis J. Zouhary, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Russell S. Bensing, Cleveland, Ohio, for Appellant. Alexis J. Zouhary, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee.

_____

**OPINION**

_____

    KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Thomas Thompson appeals the district court's denial of his motion to terminate his civil-contempt sanctions in accordance with 28 U.S.C. § 1826. Because we determine that Thompson's sanctions do not fall

under the eighteen-month incarceration limitation of § 1826, we AFFIRM the district court's order.

## I. BACKGROUND

This case originated as part of consolidated civil actions filed in 2005 and 2006 against Thompson and numerous other business-entity defendants. *See* Civ. R. 3 (Compl.), 2:06-CV-00292 (S.D. Ohio)**[1]**; *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 616–17 (6th Cir. 2013) (discussing the factual and procedural background of the civil case). The civil plaintiffs were a group of employees and one business hired by Thompson to assist him in locating a long-sunken ship and recovering the treasures it contained. *Williamson*, 731 F.3d at 616. Following the discovery of the ship and the removal of various items, including gold, the plaintiffs filed suit to recover some of the profits they contended they were owed. *Id.* During the course of that litigation, the district court entered a preliminary injunction instructing Thompson that "he shall not sell, encumber, transfer or diminish in value" any re-strike or commemorative gold coins he had in his possession. Civ. R. 738 at 1–2 (Page ID #13314–15). If the coins were not in Thompson's possession, Thompson was instructed to "submit a declaration under oath describing in detail the parties to whom the coins were transferred, any consideration received or outstanding, the date of such transfer, and the names of the recipients." *Id.* at 2 (Page ID #13315). The district court subsequently entered a temporary restraining order when Thompson transferred the coins to a third-party trust. *See* Civ. R. 770 at 1 (Page ID #13704). The order prohibited the trust "from disposing of, encumbering, transferring or diminishing in value in any way the 500 gold restrike coins." *Id.*

Prior to the temporary restraining order but after Thompson failed to provide the information detailed in the preliminary injunction, the district court issued an order requiring Thompson to attend a hearing in August 2012 to "show cause why the Court should not hold him in contempt." Civ. R. 761 at 1 (Page ID #13490). The district court explained that if Thompson did not attend the hearing, a warrant would be issued for his arrest. *Id.* When Thompson failed

---

**[1]**Because this appeal references two district-court cases, this opinion will refer to the record of the 2006 civil case as "Civ. R." and the record of Thompson's criminal case as "Crim. R."

to appear, and instead absconded to Florida, an arrest warrant was issued. *See* Crim. R. 3 at 2 (Crim. Compl.) (Page ID #5). A criminal complaint was filed against Thompson charging him with failing to comply with the district court's orders in violation of 18 U.S.C. § 401(3).[2] *Id.* at Page ID #3, 8. Following his arrest in January 2015, an information was filed charging Thompson with violating § 401(3). Crim. R. 13.

In March 2015, Thompson entered into a Rule 11(c)(1)(C) plea agreement, Crim. R. 14, which the district court later accepted, *see* Crim. R. 20 at 28–29 (Page ID #91–92). Pursuant to his plea agreement, Thompson agreed to:

> assist the Parties in Case No. 06-CV-0292, and any other party identified by the Court as having an interest, in identifying and recovering assets. Defendant agrees to testify under oath at a proceeding, amounting to a debtor's examination to identify and recover assets. This examination shall include, but is not limited to, questions regarding the gold strike commemorative coins which were the subject of previous orders in Case No. 06-CV-0292. After Defendant answers questions in the debtor's examination, a reasonable time will be permitted for a process amounting to civil discovery to verify answers and trace assets. After the debtor's examination and a reasona[b]le period of time for discovery, if the government is satisfied that all questions have fully [sic] answered, it shall recommend to the Court that the civil contempt be deemed "cured." This term shall not bar the Court from adducing and ordering a sentence including incarceration in this case for criminal contempt. The government acknowledges that it is the Parties' intention that the identification of property and assets shall proceed as a condition of Defendant's cooperation under the terms of this Agreement and that the determination of whether Defendant has in fact cooperated in this regard shall be made by this Court and only by this Court, consistent with the terms and conditions of this Agreement. Further, the government acknowledges that it is the Parties' intention that any sanctions or consequences arising from Defendants' failure to cooperate in the identification and recovery of assets in Case No. 06-CV-0292 be determined and imposed by this Court as part of the instant proceeding, and only by this Court as part of the instant proceeding . . . .

Crim. R. 14 at 2–3 (Page ID #49–50). Prior to sentencing, certain parties from the civil action, as well as a state-appointed receiver from a connected state action, filed a motion to enforce the

---

[2] 18 U.S.C. § 401(3) states: "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."

plea agreement against Thompson. *See* Crim. R. 28 at 1 (Page ID #128). On September 22, 2015, the district court ordered Thompson to "submit to a debtor's examination, pursuant to the terms of his plea agreement, during the week of October 19, 2015." Crim. R. 33 at 1–2 (Page ID #218–19).

Although Thompson initially sat for the examination, the civil parties and receiver filed a motion to hold Thompson in civil contempt for violating the plea agreement. *See* Crim. R. 46 at 1–4 (Page ID #300–03). The movants contended that not only did Thompson refuse to provide sufficient answers to their questions regarding the location of the coins, but when the government attempted to schedule another examination, "Thompson's counsel announced that Thompson [wa]s invoking his Fifth Amendment privilege and w[ould] not answer any further questions." *Id.* at 4 (Page ID #303). In response to this motion, on November 16, 2015, the district court ordered Thompson "to submit to a second debtor's examination by the Government and the *Williamson* plaintiffs" and "to comply with the terms of his plea agreement, in particular, Section 4(a)." Crim. R. 50 at 1 (Page ID #494). The district court then quoted from paragraph 4(a) of the plea agreement, explaining that Thompson had agreed to:

> assist the Parties in Case No. 06-CV-0292, and any other party identified by the Court as having an interest, in identifying and recovering assets. Defendant agrees to testify under oath at a proceeding, amounting to a debtor's examination, to identify and recover assets. This examination shall include, but is not limited to, questions regarding the gold strike commemorative coins which were the subject of previous orders in Case No. 06-CV-0292.

*Id.* at 2 (Page ID #495). The district court noted that "[i]f Thompson does not comply with the Court's Order to sit for the debtor's examination, he will be ordered to show cause why he should not be held in civil or criminal contempt for failure to comply with a Court order." *Id.* Following another delay, Crim. R. 54 (12/4/15 Gov't Notice) (Page ID #500), Thompson appeared at an examination on December 14, 2015, but refused to answer any questions, Crim. R. 56 at 1–2 (Show Cause Hr'g Order) (Page ID #505–06). The district court then ordered Thompson to appear in court the next day to "show cause as to why this Court should not hold him in civil or criminal contempt for failure to comply with the November 16, 2015 Order." Crim. R. 56 at 2 (Page ID #506). The order quoted the same section of paragraph 4(a) of the

plea agreement as the November 16, 2015 order.  The show-cause hearing was scheduled for the same day as his previously scheduled sentencing.  *Id.*

On December 15, 2015, the district court conducted Thompson's criminal-contempt sentencing and civil-contempt show-cause hearing.  After stating the sentencing factors under 18 U.S.C. § 3553(a), the court sentenced Thompson to two years of imprisonment for criminal contempt.  Crim. R. 67 at 32–37 (Sentencing Tr.) (Page ID #666–71).  However, the district court held Thompson's criminal sentence in abeyance until Thompson completed any civil-contempt sentence imposed during the show-cause hearing, which immediately followed the criminal-contempt sentencing.  *Id.* at 39 (Page ID #673).  After the conclusion of the show-cause hearing, the district court held Thompson in civil contempt for "not cooperating during the" December 14, 2015 debtor's exam, in violation of the district court's November 16, 2015 order.  *Id.* at 73 (Page ID #707).  The district court ordered Thompson to "be incarcerated indefinitely until you comply with this Court's order to provide the type of information that you had previously agreed to provide."  *Id.* at 73–74 (Page ID #707–08).  He was also ordered to pay the court a fine of $1,000 per day.  *Id.* at 75 (Page ID #709).  In an accompanying written order, the district court cited its "inherent power to enforce compliance with [its] lawful orders" as the basis for its decision to order the civil-contempt sanctions.  Crim. R. 63 at 3 (12/16/15 Contempt Order) (Page ID #623) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).  The district court concluded that it would assess Thompson's compliance every sixty days.  *Id.* at 5 (Page ID #625).  This court dismissed Thompson's appeal of his criminal-contempt conviction and sentence for lack of jurisdiction because the district court had expressly reserved entry of judgment in the criminal case "pending Thompson's purge of a civil contempt order entered in the same case."  *See United States v. Thompson*, No. 15-4424 (6th Cir. Nov. 21, 2016) (order).

Upon reaching eighteen months of incarceration for civil contempt, Thompson sought to terminate his civil-contempt sanctions.  Crim. R. 111.  Thompson contended that his actions fell under the recalcitrant-witness statute, 28 U.S.C. § 1826(a), which provides:

> Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal,

or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) the court proceeding, or

(2) the term of the grand jury, including extensions,

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

28 U.S.C. § 1826(a). Because his confinement had reached eighteen months, Thompson asserted he was entitled to release. Crim. R. 111 at 2 (Page ID #999). On November 27, 2017, the district court denied Thompson's motion, concluding that "[t]he plea agreement requires Mr. Thompson not just to provide information, but also to '*assist* the Parties' in 'identifying and *recovering* assets' and otherwise to comply with the terms of his plea agreement." Crim. R. 138 at 4 (Page ID #1244). Noting that "the utility of Mr. Thompson's assets as *evidence* is almost beside the point" and that "it is the *economic value* of the treasure that the Court seeks," the district court determined that because Thompson was required both to testify and to help recover assets, § 1826 did not apply to him. *Id.* at 6 (Page ID #1246). Additionally, referencing a previous status order in April 2017, Crim. R. 108, the district court noted that the plea agreement contemplated non-testimonial acts, such as "the signing of a limited power of attorney that allows the government to probe the contents of the Belizean trust," which the parties believed contained some of the gold coins, Crim. R. 138 at 2 (Page ID #1242).

On December 6, 2017, Thompson filed this timely appeal. *See* Fed. R. App. P. 4(a)(1)(B). Following the government's motion to dismiss for lack of jurisdiction, a panel of this court expressly found that "[t]he district court's order is effectively final, and thus appealable," under the collateral order doctrine. Order at 3 (6th Cir. Mar. 8, 2018).

## II. STANDARD OF REVIEW

We review de novo questions of statutory interpretation, such as the scope of 28 U.S.C. § 1826. *United States v. White*, 846 F.3d 170, 174 (6th Cir.), *cert. denied*, 137 S. Ct. 2203 (2017). As to the district court's denial of Thompson's motion to lift his sanctions, we ordinarily review a district court's interpretation of its own order for abuse of discretion. *Michigan v. City*

No. 17-4264 United States v. Thompson Page 7

*of Allen Park*, 954 F.2d 1201, 1213 (6th Cir. 1992). However, the unique procedural posture of Thompson's case disrupts this standard. When the district court initially considered whether Thompson was in contempt, it examined its two prior orders—issued on September 22, 2015 and on November 16, 2015—and the language of Thompson's plea agreement. *See* Crim. R. 63 at 2–3 (12/16/15 Contempt Order) (Page ID #622–23). However, both the September and November orders merely ordered Thompson to fulfill his obligations under the plea agreement and quoted particular language from paragraph 4(a) of the agreement. *See* Crim. R. 33 at 1–2 (9/22/15 Order) (Page ID #218–19); Crim. R. 50 at 1–2 (11/16/15 Order) (Page ID #494–95). Similarly, in determining whether § 1826's eighteen-month incarceration limit applied to Thompson's sanctions, the district court again examined the language of the plea agreement, noting that the court had previously determined that Thompson was in contempt based on his failure to fulfill his duties under the plea agreement. Crim. R. 63 (12/16/15 Contempt Order).

Thus, although the district court was technically examining its December 2015 contempt order when it denied Thompson's motion to lift his sanctions, because the district court's order was predicated on its interpretation of the plea agreement, the district court was more accurately examining the terms and conditions of that agreement. Consequently, we will examine the district court's denial of Thompson's motion for what it actually was: an interpretation of Thompson's plea agreement. Under these circumstances, we review de novo the district court's construction of the plea agreement, while examining for clear error the district court's factual conclusions "such as whether there was an agreement and the substance of that agreement." *United States v. Quesada*, 607 F.3d 1128, 1131 (6th Cir. 2010). Finally, in interpreting plea agreements, "this Court uses traditional principles of contract law." *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002). "Whether a contract term is ambiguous is a question of law for the court to determine" under a de novo standard. *Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1023, 1025 (6th Cir. 2001) (noting that "[w]e review the district court's conclusions of law de novo"), *cert. denied*, 122 S. Ct. 1606 (2002).

### III. DISCUSSION

We have rarely interpreted the scope of 28 U.S.C. § 1826. A review of the case law of this court, as well as other Circuit courts, identifies two primary decisions addressing this statute:

*United States v. Mitchell*, 556 F.2d 371 (6th Cir.), *cert. denied*, 98 S. Ct. 406 (1977), and *Armstrong v. Guccione*, 470 F.3d 89 (2d Cir. 2006), *cert. denied*, 128 S. Ct. 486 (2007).

In *Mitchell*, two criminal defendants were ordered to submit voice exemplars in preparation for their own trial. 556 F.2d at 381. The voice exemplars were necessary for the government to match the criminal defendants to voice recordings taken during a sting operation. *Id.* After the defendants refused to provide the exemplars, the district court held the defendants in civil contempt and ordered them incarcerated. *Id.* at 381, 383. The defendants asserted that under § 1826, their incarceration could not exceed eighteen months. *Id.* at 384. Noting that § 1826 was meant to limit the district court's inherent authority to hold the defendants in civil contempt, this court ultimately concluded that § 1826 was applicable and, therefore, defendants could not be incarcerated in excess of eighteen months. *Id.* This court further explained that the defendants were, indeed, "witnesses" as understood by the statute and that because the order required the defendants to provide "information" in the form of the voice exemplars, § 1826 encompassed their conduct. *Id.*; *see also Palmer v. United States*, 530 F.2d 787, 789 & n.3 (8th Cir. 1976) (concluding that handwriting exemplars constitute "other information" under § 1826).

In *Armstrong*, the Second Circuit considered whether a district court's order requiring the defendant to turn over various corporate assets to a court-appointed receiver fell within § 1826. 470 F.3d at 93. Noting that the *Mitchell* court determined that the order requiring the defendants to submit voice exemplars constituted an order to provide other information "presumably because the voice exemplars were sought for their informational content and had no other value," the Second Circuit ultimately concluded that an order requiring merely the *production* of assets did not constitute an order to provide information. *Id.* at 109–10 ("[T]he order which Armstrong refused to obey commands the production of gold bullion, valuable coins, and antiquities that are sought not because of any information they might contain, but because they are objects of monetary value that are the property of the corporation in receivership."). Finally, the Second Circuit explained that, although the production of a computer hard drive might fall within the statute, where it "presumably contains records of the Princeton funds," nonetheless the issue was moot because Armstrong had been ordered to provide both the hard drive *and* the tangible assets. *Id.* at 110. Given this legal background, we now examine whether, given the terms of

Thompson's plea agreement, the statutory limitations of § 1826 apply to Thompson's contemptuous conduct.

**A. Order to Sit for A Debtor's Examination**

As an initial matter, and for the sake of clarity given this procedurally and factually complicated case, we note that even if Thompson's plea agreement required Thompson to engage in non-testimonial conduct, if Thompson were held in contempt solely for testimonial conduct, such as failing to participate in a debtor's examination and answer questions truthfully, § 1826 would plainly apply to him. Parts of Thompson's plea agreement explained that Thomson was required to "*testify* under oath at a proceeding, amounting to a debtor's examination" and that the examination would "include, but [wa]s not limited to, *questions* regarding the gold strike commemorative coins." Crim. R. 14 at 2 (Page ID #49) (emphasis added). Were Thompson to be held in contempt solely for failing to fulfill those particular requirements, Thompson would clearly be "refus[ing] . . . to comply with an order of the court to *testify* or *provide other information*." 28 U.S.C. § 1826 (emphasis added). Put differently, the only way Thompson could cure his contempt in such a scenario would be to engage in the exact type of conduct encompassed by § 1826. None of the government's arguments undermine this analysis.

First, even if Thompson's plea agreement (and the district court's order requiring him to comply with its terms) encompasses non-testimonial conduct in addition to "testify[ing]" or "provid[ing] other information," the possible scope of the agreement does not control if Thompson's only contemptuous conduct were refusing to testify in a debtor's examination. *Armstrong* is instructive here. As noted above, the Second Circuit in *Armstrong* ultimately determined that because the defendant was in contempt for failing to follow an order requiring him both to turn over assets (non-testimonial) and to surrender a computer hard drive containing "other information," it ultimately did not matter that the hard drive would conceivably fall within § 1826's limitations. *Armstrong*, 470 F.3d at 110. However, the Second Circuit further explained that, even though the order required Armstrong to engage in those two types of conduct, "[i]f Armstrong were being confined solely because of his refusal to produce the computer files, we would need to consider whether the eighteen-month cap of § 1826(a)

applies." *Id.* The Second Circuit's comment was presumably based on the understanding that, even if § 1826 applied to Armstrong's failure to turn over "other information"—i.e., the computer hard drive—because he was also required to engage in non-testimonial conduct which did not have a corresponding incarceration limit—turning over the monetary assets—the eighteen-month limitation did not ultimately impact the length of Armstrong's incarceration for civil contempt. Conversely, if Thompson were held in contempt solely for failing to testify—conduct that falls squarely within § 1826—Thompson's incarceration for civil contempt could last only eighteen months.

In response, the government asserts that Thompson is not a "witness" as traditionally understood under § 1826 because Thompson's testimony was sought only in service of finding items (the gold coins) which had no independent informational value. Appellee Br. at 32–34. The government's argument finds some support in § 1826's limited legislative history. *See* Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922–23 (1970) (explaining that the statute was enacted "to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process"); S. Rep. 91-617 at 57 (1969) (noting that the statute "represents the best efforts of the committee to codify and spell out the powers of the courts to deal with witnesses who are unlawfully withholding information necessary to move forward an investigation"). However, given the procedural posture of this case, we are not prepared to say that Thompson's testimony would be of *no* evidentiary value to the 2006 civil plaintiffs, particularly since those same plaintiffs were pursuing a conversion claim against Thompson based on the gold coins. *See generally Williamson*, 731 F.3d at 616; *see also In re Younger*, 986 F.2d 1376, 1378 (11th Cir. 1993) (concluding that § 1826 applies to bankruptcy proceedings and implicitly recognizing that the defendant's "refus[al] to answer questions in a bankruptcy case concerning the location of certain assets" which he had been ordered to surrender fell under the eighteen-month incarceration limitation); *In re Martin-Trigona*, 732 F.2d 170, 174–76 (2d Cir.), *cert. denied*, 105 S. Ct. 191 (1984) (determining implicitly that an order requiring the defendant to testify regarding the status of his assets in a bankruptcy proceeding fell under § 1826).

Furthermore, as we noted in *Mitchell*, the limited legislative history of § 1826, while instructive, is of "minimal value." *Mitchell*, 556 F.2d at 384. Given the plain language of the statute, were Thompson to be held in contempt for failing solely to sit for a debtor's examination and to testify about the location of his assets, § 1826 would limit his incarceration for civil contempt to eighteen months. *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) ("[I]t is never our job to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have done had it faced a question that . . . it never faced."); *Bridewell v. Cincinnati Reds*, 155 F.3d 828, 830 (6th Cir. 1998) ("[W]e c[an]not look to the legislative history to contravene the clear and unambiguous language of the statute.").

The government also argues that the requirement in Thompson's plea agreement that he testify in a debtor's examination "was only in service of the primary objective: 'identifying and recovering assets.'" Appellee Br. at 28–29. Therefore, according to the government, to the extent Thompson's testimony was relevant to the identification and recovery of the assets, § 1826 is inapplicable. But as stated, the debtor's examination amounts to testimonial conduct that would fall within § 1826 eighteen-month incarceration limitation. This is so without regard to whether Thompson's testimony would be necessary to assist the parties in recovering assets.

As explained in further detail below, however, Thompson's contempt was not predicated only on his failure to testify or answer questions; rather, because Thompson also failed to fulfill the non-testimonial requirements of his plea agreement, § 1826 does not limit Thompson's period of incarceration.

**B.  Non-Testimonial Conduct**

As noted above, Thompson's plea agreement required Thompson to "testify under oath at a proceeding, amounting to a debtor's examination" and to answer "questions regarding the gold strike commemorative coins." Crim. R. 14 at 2 (Page ID #49). This is not, however, the only conduct Thompson was required to engage in under the plain language of the plea agreement and, significantly, was not the only basis on which the district court held Thompson in contempt. Rather, Thompson's plea agreement—and the district court's November 2015 order requiring Thompson to abide by its terms—also explained that Thompson was required to "assist" the civil

No. 17-4264　　　　　　　　　　*United States v. Thompson*　　　　　　　　　　Page 12

plaintiffs "in identifying and recovering assets." *Id.* at 2–3 (Page ID #49–50).  Such a requirement to assist in "recovering assets" is broad:  recovering assets could, and likely would, require Thompson both to provide information regarding the location of assets and to undertake various non-testimonial actions, such as signing a limited power of attorney to enable the parties to review the contents of a trust and recover any assets located within the trust.  *See* Crim. R. 108 (4/25/17 Status Order); Crim. R. 138 (11/27/17 Order Denying Mot. to Terminate Sanctions).³ By requiring Thompson to "assist" the parties "in identifying and recovering assets," the plea agreement and the district court's order explicitly left open the likelihood that Thompson's mere testimony would be insufficient, particularly in "recovering" Thompson's assets.

Thompson counters that although the first sentence of paragraph 4(a) of the plea agreement appears broad, the subsequent language indisputably limits what the parties meant by the term "assist."  However, the unambiguous language of the plea agreement does not support Thompson's conclusion.⁴  While the agreement goes on to explain that "Defendant agrees to testify under oath at a proceeding, amounting to a debtor's examination, to identify and recover assets," there is no suggestion in the agreement that the debtor's examination is the *only* means by which Thompson is expected (and indeed, required) to "assist" the parties "in identifying and recovering assets."  As noted above, the term "recover" clearly anticipates broader types of actions than a debtor's examination.  Additionally, the fact that the plea agreement provides that, "[a]fter [Thompson] answers questions in the debtor's examination, a reasonable time will be

---

³Although Thompson does not address whether an order requiring him to sign a limited power of attorney would fall within § 1826's limitations, we conclude such an action is clearly non-testimonial and thus outside the scope of § 1826.  The act of signing a limited power of attorney is a legal tool that does not, in and of itself, express or contain any information.  And unlike voice or handwriting exemplars, there is no informational value in the actual document containing Thompson's signature—it cannot be compared to other, similar documents, and although it allows the parties to gain information by searching the contents of the trust, that information is not inherent to the document bearing Thompson's signature.  *Cf. Mitchell*, 556 F.2d at 384; *Palmer*, 530 F.2d at 789 n.3.  Thus, although § 1826 enumerates various forms that "other information" may take, including "any book, paper, document, record, recording or other material," the plain language of § 1826 makes clear that it is the informational value of those documents that designates them as "other information."  28 U.S.C. § 1826.

⁴Because we conclude that the terms of Thompson's plea agreement are unambiguous, we need not examine whether the district court committed clear error in interpreting the facts underlying the agreement.  *See United States v. Debreczeny*, 69 F. App'x 702, 705–06 (6th Cir. 2003) ("If the terms of [a] plea agreement are equivocal . . . , the district court has discretion to interpret its terms.  'The content of a plea agreement and what the parties agreed to is a question of fact for the district court that is reviewed for clear error.'" (quoting *Lukse*, 286 F.3d at 909)).

permitted for a process amounting to civil discovery to verify answers and trace assets" and, if the government "is satisfied that all questions have [been] fully answered, it shall recommend to the Court that the civil contempt be deemed 'cured,'" does not help Thompson. Similar to the requirement that Thompson sit for a debtor's examination, this language does not indicate that Thompson will be required only to testify or provide "information." Instead, it shows the parties' belief that, were Thompson to testify truthfully, the parties would be able successfully to "verify [Thompson's] answers and trace assets," thus enabling both the identification and *recovery* of those assets. This provision does not implicitly or explicitly limit what "assist" in "recovering assets" might entail. Finally, the plea agreement notes that "the identification of property and assets shall proceed as a condition of Defendant's cooperation under the terms of this Agreement." Again, beyond reiterating Thompson's responsibility to identify assets, a plain reading of this statement does not limit what, precisely, Thompson will be required to do to assist in *recovering* those assets. This statement merely specifies what one condition of the agreement would be—successfully identifying assets—rather than explicitly limiting Thompson's responsibilities under the agreement.

Along with encompassing non-testimonial conduct, the record evidence shows that before the eighteen-month limitation under § 1826 became applicable, Thompson was, in fact, on notice that his contempt order included his failure to engage in non-testimonial conduct, specifically his failure to execute a limited power of attorney. During a debtor's examination in January 2017, the civil parties attempted to have Thompson sign a limited power of attorney to permit them to examine the contents of a trust Thompson owned to determine whether the trust contained the coins. Crim. R. 94 at 1–2 (1/16/17 Joint Status Report) (Page ID #859–60); Crim. R. 99 at 9 (1/10/17 Status Hr'g Tr.) (Page ID #923). Thompson refused. *Id.* Following various orders and status conferences, in April 2017, the district court concluded that Thompson's plea agreement, "which requires Mr. Thompson 'to assist the Parties in Case No. 06-CV-0292, and any other party identified by the Court as having an interest, in identifying and recovering assets,' contemplates, among other things, exactly what the government seeks here: the signing of a limited power of attorney that allows the government to probe the contents of the Belizean trust." Crim. R. 108 at 3 (4/25/17 Status Order) (Page ID #990); *see also* Crim. R. 114 at 10 (4/21/17 Status Hr'g Tr.) (Page ID #1026) (overruling Thompson's objection to executing the

power of attorney).  In the April 25, 2017 Status Order, the district court explicitly ordered Thompson to sign a limited power of attorney pursuant to paragraph 4(a) of his plea agreement within twenty-eight days.  Crim. R. 108 at 3 (Page ID #990).  On May 23, 2017, the parties submitted a joint status report explaining that Thompson had refused to execute the power of attorney.  Crim. R. 110 at 1 (Page ID #997).  Thompson's continued refusal was confirmed in two later status hearings.  *See* Crim. R. 127 at 4–5 (6/30/17 Status Hr'g Tr.) (Page ID #1159–60); Crim. R. 130 at 4 (8/18/17 Status Hr'g Tr.) (Page ID #1195).

　　　Based on these records, the April 25, 2017 order—issued almost two months before the eighteen-month limitation under § 1826 became applicable—clearly put Thompson on notice that, in order to cure his contempt, Thompson not only would have to sit for a debtor's examination and provide truthful testimony, but also would have to execute a limited power of attorney to permit the parties to "probe" the contents of a Belizean trust.  After all, Thompson was not held in contempt for only refusing to submit to the debtor's examination; rather, Thompson was ordered to comply with all the terms of his plea agreement, including "assisting" the parties "in identifying and recovering assets."  *See* Crim. R. 67 at 73 (12/15/15 Contempt Hr'g Tr.) (Page ID #707) ("Mr. Thompson was in violation of the Court's November 16, 2015, order which simply required him to abide by the terms of his plea agreement, including paragraph 4A which . . . stated that he would assist the parties in identifying and recovering the assets . . . ."); R. 63 at 5 (12/16/15 Contempt Order) (Page ID #625) ("The Court will impose an indefinite sentence of incarceration for civil contempt until Thompson complies with the Court's order to sit for the debtor's examination and assist the Civil Litigants in identifying and recovering assets.").  Additionally, because Thompson was on notice that he was required to engage in non-testimonial conduct to cure his contempt before his incarceration exceeded eighteen months, the fact that Thompson was also in contempt for failing to testify at a debtor's examination—conduct which would fall under § 1826's limitation—is immaterial.  *See Armstrong*, 470 F.3d at 110.  Section 1826 thus does not provide Thompson relief.

　　　In summary, to the extent Thompson still refuses to comply with the district court's order to sign a limited power of attorney, § 1826 does not limit the length of Thompson's incarceration.  Rather, the length Thompson's incarceration is restricted only by the Due Process

Clause and, if applicable, any changed circumstances which prohibit Thompson from curing his contempt. *See Shillitani*, 384 U.S. at 371 ("[T]he justification for coercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the court's order."); *Armstrong*, 470 F.3d at 110–12 (examining whether the defendant's confinement for civil contempt violated the Due Process Clause). Because Thompson has not presented any argument under either theory, we affirm the district court's order denying Thompson's motion to terminate his sanctions pursuant to 28 U.S.C. § 1826.

**C.  District Court's Statements During Status Hearings**

Although we determine that, because Thompson's contempt currently includes his failure to engage in non-testimonial conduct, § 1826 does not apply to him, one more issue warrants further consideration, namely the district court's evolving statements regarding Thompson's contempt. Ultimately, we determine that this issue does not undermine our conclusion as to the applicability of § 1826.

Both in his appellate briefs and at oral argument, Thompson asserts that because the district court has framed his contempt in terms of his failure to testify and provide information, Thompson's actions clearly fall within § 1826. *See* Appellant Br. at 19–21; Reply Br. at 3–5. It is true that, when Thompson was initially held in contempt, the district court focused on Thompson's refusal to answer questions posed to him during the debtor's exam and noted that Thompson could cure his contempt if he provided truthful answers. *See* Crim. R. 67 at 69 (12/15/15 Contempt Hr'g Tr.) (Page ID #703) (explaining that Thompson's delays are always "on the eve of each critical proceeding where we get to the pivotal question: Where is the treasure? Where are the assets? Where's the loot?"); *id.* at 74 (Page ID #708) ("Once you perform the act required by the Court, that is, agree to sit down and participate in the debtor's examination, this term of incarceration will be lifted as you will have purged yourself of the contempt."); *id.* at 78 (Page ID #712) ("[I]f you go in there and answer the questions directly and honestly and not evasively . . . then you can purge yourself of the contempt."). The district court reiterated these statements in later status hearings. *See* Crim. R. 115 at 20 (9/9/16 Status Hr'g Tr.) (Page ID #1070) ("We will reconvene this hearing on November the 9th to determine whether Mr. Thompson is ready to disclose the whereabouts of the gold."); Crim. R. 116 at 4

(11/9/16 Status Hr'g Tr.) (Page ID #1077) ("Mr. Thompson certainly has the ability to purge himself once he makes the decision . . . to disclose his knowledge of the whereabouts of the gold."). Were the district court to have explained Thompson's contempt solely in terms of his failure to provide answers and testify, § 1826 would apply to him. *See supra* Part III.A. After all, if a district court expressly (and consistently) limits the actions which a contemnor must undertake in order to cure his contempt, then the contemnor cannot later be faulted for failing to cure his contempt based on other conduct of which he had no notice.

The problem for Thompson, however, is that the district court's contempt order was not limited only to Thompson's failure to attend a debtor's examination and truthfully answer questions. Rather, as the district court explained at the contempt hearing and in the accompanying written order, Thompson was held in contempt for failing to attend a debtor's examination *and* otherwise perform the requirements of his plea agreement. *See* Crim. R. 67 at 73 (12/15/15 Contempt Hr'g Tr.) (Page ID #707); R. 63 at 5 (12/16/15 Contempt Order) (Page ID #625). And as Thompson was well aware following the district court's April 2017 hearing and order, such contempt included his failure to sign a limited power of attorney.

Furthermore, the district court's statements that Thompson could cure his contempt by sitting for a debtor's examination and answering questions truthfully do not indicate that, in the appropriate situation, Thompson would not also be required to engage in other, non-testimonial conduct. *Cf.* Crim. R. 108 at 3 (4/25/17 Status Order) (Page ID #990) (requiring Thompson to execute a limited power of attorney). The district court's statements are, instead, specific to the context of the contempt hearing and status hearings and the factual issues then before the district court. At the time the district court made these statements, Thompson's only contemptuous actions revolved around his failure to answer questions in good faith during a debtor's examination; the concern regarding the limited power of attorney or the Belizean trust was not yet squarely before the court. When that issue arose, the district court ordered Thompson to follow the terms of his plea agreement by executing the limited power of attorney and, furthermore, described Thompson's contempt in terms of his refusal to execute the document.

No. 17-4264 United States v. Thompson Page 17

*See* Crim. R. 130 at 13 (8/18/17 Status Hr'g Tr.) (Page ID #1204) ("Mr. Thompson can purge his contempt quite easily by signing the power of attorney and submitting to the debtor's exam.").**5**

Finally, paragraph 4(a) of Thompson's plea agreement explains that "the government acknowledges that it is the Parties' intention that any sanctions or consequences arising from Defendant's failure to cooperate in the identification and recovery of assets in Case No. 06-CV-0292 be determined and imposed by this Court as part of the instant proceeding, and only by this Court as part of the instant proceeding." Crim. R. 14 at 3 (Page ID #50). Thompson thus explicitly acknowledged and agreed to a situation in which, depending on Thompson's failure to "cooperate in the identification and recovery of assets," the district court would be permitted to determine which sanctions (such as civil contempt) would be appropriate. The district court did just that when it ordered Thompson both to testify at a debtor's examination and to execute a limited power of attorney in order to cure his civil contempt. Consequently, although the district court's directive to Thompson may have evolved based on the parties' needs under the plea agreement, this does not undermine our conclusion that Thompson's sanctions fall outside the scope of 28 U.S.C. § 1826.

### IV. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's denial of Thompson's motion to terminate his civil-contempt sanctions.

---

**5**During the April 21, 2017 status hearing in which the district court concluded that Thompson was required to execute a limited power of attorney under his plea agreement, the district court again described Thompson's contempt in terms of Thompson's refusal to testify at the debtor's examination. *See* Crim. R. 114 at 28 (Page ID #1044) ("[H]e needs to be able to put himself in a position to purge himself of contempt by answering questions as to the location of the gold, et cetera."). However, context again limits the significance of the district court's statement. During the April 2017 hearing, the district court ordered Thompson to execute the power of attorney, reasoning it was required under his plea agreement. *Id.* at 10 (Page ID #1026). Thompson had not yet refused to comply with the district court's order to sign the power of attorney, and any contempt Thompson faced was thus still limited to Thompson's refusal to answer questions during the debtor's examination. Notably, after Thompson refused to execute the limited power of attorney in May 2017, the district court broadened its discussions regarding Thompson's contempt. *See* Crim. R. 127 at 15 (6/30/17 Status Hr'g Tr.) (Page ID #1170) (asking whether Thompson was prepared "to comply with the plea agreement and purge himself of the contempt"); Crim. R. 130 at 13 (8/18/17 Status Hr'g Tr.) (Page ID #1204) (noting that Thompson could purge his contempt "by signing the power of attorney *and* submitting to the debtor's exam" (emphasis added)).

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 17-4264

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

    v.

THOMAS G. THOMPSON,

    Defendant - Appellant.

Before: MOORE, CLAY, and DONALD, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's denial of Thomas Thompson's motion to terminate his civil-contempt sanctions is AFFIRMED.

                                        **ENTERED BY ORDER OF THE COURT**

                                        Deborah S. Hunt, Clerk