UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| **Plaintiff,** : | Case No. 2:15-cr-081 |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | |
| **THOMAS G. THOMPSON,** : | |
| : | |
| **Defendant.** : | |

**OPINION & ORDER**

This case is before the Court for a plenary ruling on several pending motions (ECF Nos. 202, 203, 206, 209, 213, 219, 234, 239). For the reasons that follow, Defendant's Motion to Dismiss Civil Contempt Charges (ECF No. 202) and Motion for Compassionate Release (ECF Nos. 203 & 213) are **DENIED,** his Motion for Enlargement of Time to Retain Counsel (ECF No. 234) is **DENIED AS MOOT,** and his Motion for Enlargement of Time to Retain Counsel and to Respond to Recovery Limited Partnership Trust's Motion for Inspection and Custody of Property Seized from Defendant Thompson (ECF No. 239) is **GRANTED in part and DENIED in part**. Interested Party John Pidcock's Motions for Joinder (ECF Nos. 206, 209, 219) are **GRANTED.** *Sua sponte*, the Court will set a compliance hearing to evaluate Mr. Thompson's ability and willingness to purge himself of civil contempt.

**I. BACKGROUND**

In the year 1857, the SS Central America sank beneath stormy seas off the Carolina coast, laden with some 21 tons of California gold. Over 100 years later, an endeavoring oceanographer, Thomas Thompson, sought to recover it from the murky depths of the Atlantic. Acting through the Recovery Limited Partnership and various other entities, Mr. Thompson solicited financing and

assembled his crew for a search-and-recovery project.[1] He successfully located the shipwreck in 1988 and, using a submersible robot, resurfaced gold coins, bars, and ingots worth up to $400 million. (ECF No. 3 ¶ 2). *See generally Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 612–15 (6th Cir. 2013) (discussing this factual background).

Neither the investors nor the crew were paid their share of the bounty. In 2005 and 2006, these parties sued Mr. Thompson and his business entities, and the actions were consolidated in federal court *sub nom. Williamson v. Recovery Limited Partnership*, No. 2:06-cv-0292 (Sargus, J.). After a voluminous procedural history, the court issued "a preliminary injunction against Thomas G. Thompson with regard to the five hundred (500) re-strike or commemorative gold coins transferred to him by Columbus Exploration, LLC." *Williamson*, ECF No. 738 at 1 (July 18, 2012). "If all or some of these coins [were] in the physical possession or control of Thompson," he was ordered to submit a declaration "indicating such possession or control . . . [and] the precise location of the coins." *Id.* at 2. Further, Mr. Thompson was "not [to] sell, encumber, transfer or diminish in value such coins." *Id.* "If such coins [were] not in Thompson's possession or control," he was ordered to "submit a declaration under oath describing in detail the parties to whom the coins were transferred, any consideration received or outstanding, the date of such transfer, and the names of the recipients." *Id.* When Mr. Thompson informed the court that he had placed the coins in the control of a third-party trust, the court issued a temporary restraining order "prohibiting [the trust] from disposing of, encumbering, transferring or diminishing in value in any way the 500 gold restrike coins." *Williamson*, ECF No. 770 at 1 (Aug. 7, 2012). *See generally United States v. Thompson*, 925 F.3d 292, 294 (6th Cir. 2019) (discussing this procedural history).

---

[1] The Dispatch Printing Company, an Interested Party in this case, was one financier. The other Interested Party, John Pidcock, is Trustee of the Recovery Limited Partnership Trust.

Mr. Thompson otherwise did not comply with the court's order. He failed to "provide any information as to who created the trust, how and why it was created, who benefits from the trust, who is the trustee, whether disbursements have been made, why the coins were transferred to the trust, and why no consideration was paid. Additionally, Thompson [did] not reveal where the gold coins are being held." *Williamson*, ECF No. 761 at 4. The court made "a preliminary finding of contempt" due to Mr. Thompson's "blatant disregard" of its previous order and set a show-cause hearing for August 13, 2012. *Id.* at 5. Rather than appear at the hearing, Mr. Thompson absconded, leading the court to issue an arrest warrant. (ECF No. 3 ¶¶ 4, 6). The United States Marshal Service soon learned he was "attempting to surreptitiously live in a house in Florida." (*Id.* ¶ 9). A civil informant searched the Florida residence—which he found to be abandoned—and discovered 12 cell phones, money straps for $10,000 bundles of cash, and the book "How to Be Invisible." (*Id.* ¶¶ 12–16).

In March 2013, the Government opened criminal contempt proceedings before this Court, based on Mr. Thompson's failure to comply with the orders of the Honorable Judge Sargus. (*Id.* ¶ 23). An arrest warrant issued on the criminal contempt charge and was executed about two years later, when Mr. Thompson finally was located in Boca Raton, Florida. (ECF Nos. 4 & 7).

Mr. Thompson pled guilty in April 2015 to the criminal contempt charge and entered a Rule 11(c)(1)(C) plea agreement. (ECF No. 14). As part of his plea, Mr. Thompson "agree[d] to assist the Parties in [*Williamson*,] Case No. 06-CV-0292, and any other party identified by the Court as having an interest, in identifying and recovering assets." (*Id.* ¶ 4). The plea specifically obligated Mr. Thompson to "testify under oath at a proceeding, amounting to a debtor's examination," where he would answer "questions regarding the gold strike commemorative coins which were the subject of previous orders in [*Williamson*]." (*Id.*). The Court ordered Mr.

3

Thompson to sit for the debtor's examination (ECF No. 33), but Mr. Thompson refused to cooperate in questioning. (*See* ECF No. 50). The Court then ordered a follow-up examination and warned that "[i]f Thompson does not comply with the Court's Order to sit for the debtor's examination, he will be ordered to show cause why he should not be held in civil or criminal contempt for failure to comply with a Court order." (*Id.* at 2). At the second debtor's examination, Mr. Thompson again refused to answer questions. (*See* ECF No. 56).

On December 15, 2015, the Court held a sentencing hearing on the plea agreement and a show-cause hearing on Mr. Thompson's noncompliance in the Court-ordered debtor's examinations. (ECF No. 63). Consistent with the plea agreement, the Court sentenced Mr. Thompson to a two-year term of imprisonment, a one-year term of supervised release, 208 hours of community service, a $250,000 fine, and a $100 special assessment for criminal contempt of Judge Sargus's orders in *Williamson*. (ECF No. 67, Tr. 37:13–39:8, 42:18). Additionally, the Court found Mr. Thompson in civil contempt for failure to comply with the Court's Order that he submit to a debtor's examination in accordance with his plea agreement. (ECF No. 63 at 1). The Court ordered Mr. Thompson "to be incarcerated and pay a fine of $1,000.00 per day until he purges himself of the civil contempt." (*Id.*). Mr. Thompson's criminal contempt sentence was tolled "until he cures the civil contempt." (*Id.*).

To this day, Mr. Thompson refuses to identify the assets as ordered. He therefore remains incarcerated for civil contempt and has not begun to serve his criminal contempt sentence. On appeal, the Sixth Circuit held that Mr. Thompson's civil contempt sanctions "do not fall under the eighteen-month incarceration limitation of [28 U.S.C.] § 1826," the recalcitrant witness statute. *United States v. Thompson*, 925 F.3d 292, 294 (6th Cir. 2019). "Thompson's contempt was not predicated only on his failure to testify or answer questions; rather, because Thompson also failed

to fulfill the non-testimonial requirements of his plea agreement, § 1826 does not limit Thompson's period of incarceration." *Id.* at 301. The Court has reminded Mr. Thompson on many occasions that he holds the keys to his release, but to no avail. (*See, e.g.*, ECF Nos. 93, 99, 113, 114, 115, 116, 127, 130, 179, 200, 220, 222, 229, 233). Mr. Thompson generally has maintained that he does not know where the Belizean trust is holding the gold coins and that he cannot procure that information while under duress; yet, he also has refused to execute a Court-approved limited power of attorney authorizing the Government to probe the contents of the trust. (*See* ECF No. 108).

This brings the Court to the now-pending motions. In December 2020, Mr. Thompson filed a *pro se* Motion to Dismiss Civil Contempt Charges (ECF No. 202). Interested Party The Dispatch Printing Company opposed (ECF No. 204); and Interested Party John Pidcock, as Trustee of the Recovery Limited Partnership Trust, moved for joinder in the opposition (ECF No. 206). Also in December 2020, Mr. Thompson filed a *pro se* Motion for Compassionate Release (ECF No. 203). The Court appointed counsel under the Criminal Justice Act to represent Mr. Thompson solely with respect to compassionate release. Counsel supplemented Mr. Thompson's *pro se* Motion in January 2021. (ECF No. 213). The Government opposed Mr. Thompson's original and supplemental compassionate release motions. (ECF Nos. 207 & 218). The Dispatch Printing Company also filed opposition briefs (ECF Nos. 208 & 214), and Mr. Pidcock moved for joinder in the opposition (ECF Nos. 209 & 219). All Motions for Joinder (ECF Nos. 206, 209, 219) are hereby **GRANTED.**

At Mr. Thompson's request, the Court held these matters in abeyance while Mr. Thompson attempted to secure counsel. (*See* ECF Nos. 220, 222, 229, 233). In a status conference held January 24, 2022, the Court advised Mr. Thompson that he would have until March 21 to obtain counsel; otherwise, the Court would proceed to rule on the pending motions. (ECF No. 229, Tr.

5

10:19–23). The Court reiterated this deadline in a second status conference held February 11, 2022. (ECF No. 233, Tr. 7:12–25). Shortly before the deadline, Mr. Thompson, purportedly acting through one Francis Michael Lorz (who is not an attorney), moved for an additional 60 days to obtain counsel. (ECF No. 234). The Court did not rule on this motion; but in any event, those 60 days now have passed. Therefore, Mr. Thompson's Motion for Enlargement of Time to Retain Counsel (ECF No. 234) is **DENIED AS MOOT.**

While the Motion previously detailed was pending, Mr. Thompson made another request for an additional 60 days to obtain counsel. (ECF No. 239). He has also requested this Court grant him additional time to address RLP Trust's Motion for Inspection and Custody of Property Seized from Defendant Thompson (ECF No. 239). (ECF No. 239 at 1). With respect to Mr. Thompson's request for additional time to seek counsel, this motion is denied for the same reasons as stated above. These repeated requests for extensions are inconsistent with the schedule set by this Court and only serve further to delay the case. This Court has granted Plaintiff at least five extensions of time to secure counsel and has held these matters in abeyance in the interim. (*See* ECF Nos. 178, 179, 220, 222, 229, 232). Through these extensions and continuances, this Court has afforded Defendant close to **four months** to obtain counsel. (*Id.*). This Court sees no reason for Plaintiff to be afforded any further extensions.

This Court does, however, find good cause to allow Mr. Thompson more time to file his response to RLP Trust's Motion for Inspection and Custody of Property Seized. Mr. Thompson will not, however, be afforded the whole requested extension.

Therefore, pursuant to the foregoing analysis, Mr. Thompson's Motion for Enlargement of Time to Retain Counsel and to Respond to Recovery Limited Partnership Trust Motion for Inspection and Custody of Property Seized from Defendant Thompson (ECF No. 239) is

**GRANTED in part and DENIED in part**. Mr. Thompson's response to RLP Trust's Motion shall be due fourteen (14) days from the date of this Order. The Court will proceed to adjudicate the other pending matters.

## II. MOTION TO DISMISS CIVIL CONTEMPT CHARGES

First is Mr. Thompson's *pro se* Motion to Dismiss Civil Contempt Charges (ECF No. 202). Mr. Thompson "submits that in light of verdicts from a Nov.5–Nov.8, 2018 trial" in the case *The Dispatch Printing Co. v. Recovery Limited Partnership*, No. 05CVH04-4220 (Franklin Cty. Ct. C.P.), "the underlying purpose of him assisting in the identifying and recovery of assets, the commemorative restrike coins, no longer exists." (ECF No. 202 at 2). Those verdicts, totaling $19,426,032.00, were entered December 18, 2018, against Mr. Thompson and in favor of The Dispatch Printing Company, Columbus Exploration, LLC, and Recovery Limited Partnership, on the following claims: breach of the Columbus Exploration Operating Agreement, breach of the implied duty of good faith and fair dealing, breach of fiduciary duty, and breach of the Recovery Limited Partnership Agreement. (ECF No. 204, Ex. A (final judgment entry)). In Mr. Thompson's view, "Plaintiffs have no further claim against Defendant's assets. They may seek to collect the trial judgments, but the commemorative restrike coins themselves have been reduced to dollars and are no longer an issue at law." (ECF No. 202 at 2).

The Interested Parties, who procured the verdicts and judgment, oppose Mr. Thompson's Motion as "the epitome of illogic and contradiction." (ECF No. 204 at 1; No. 206). The "'underlying purpose' of the plea agreement," they explain, was "to secure the coins in order to satisfy the civil litigants' claims." (ECF No. 204 at 1). To "abandon that mechanism once the judgments are actually entered . . . would sabotage the whole purpose of the plea agreement." (*Id.* at 2).

The Court will not lift Mr. Thompson's civil contempt on account of the jury verdicts. Contrary to Mr. Thompson's assertion, the gold coins are very much "an issue at law" (ECF No. 202 at 2) insofar as the Interested Parties now have a judgment against his assets. If anything, the judgment *strengthens* the Interested Parties' claims to the coins. Mr. Thompson remains obligated by his plea agreement to "assist the Parties . . . in identifying and recovering assets" (ECF No. 14 ¶ 4)—and this he has not done. Because Mr. Thompson remains in contempt of this Court's orders to comply with the terms of his plea agreement, his Motion to Dismiss Civil Contempt Charges (ECF No. 202) is **DENIED.**

### III.  MOTION FOR COMPASSIONATE RELEASE

Next is Mr. Thompson's *pro se* Motion for Compassionate Release (ECF No. 203), as supplemented by his Court-appointed counsel (ECF No. 213). The Government opposes (ECF Nos. 207 & 218), joined by the Interested Parties (ECF Nos. 208, 209, 214, 219).

"Compassionate release" is the colloquial name for a sentence reduction pursuant to 18 U.S.C. § 3582(c). The statute provides that a sentencing court "may reduce the term of imprisonment" of a defendant who shows "extraordinary and compelling reasons [to] warrant such a reduction." *Id.* § 3582(c)(1)(A). If "extraordinary and compelling reasons" are found, the court also must consider whether "'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission,'" then weigh "all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

There is a threshold question of whether the compassionate release statute applies to Mr. Thompson's incarceration on civil contempt. The Government argues it should not, as Mr. Thompson "is not serving a term of imprisonment and is not in the custody of the Bureau of

Prisons." (ECF No. 218 at 2). When presented earlier with Mr. Thompson's Emergency Motion for Temporary Release from Incarceration Due to the COVID-19 Pandemic (ECF Nos. 181 & 182), the Court analogized Mr. Thompson's civil contempt to a pretrial detainee and applied the factors identified in the Bail Reform Act, 18 U.S.C. § 3142(g). (ECF No. 194 at 4–5).[2] It did not consider expressly whether a compassionate release framework could apply. Were the Court to construe Mr. Thompson's current Motion for Compassionate Release as instead seeking relief under the Bail Reform Act, Mr. Thompson would need to meet the higher standard for reconsideration of the Court's prior denial. *See United States v. Robinson*, 5 F. Supp. 3d 933, 936 (S.D. Ohio 2014) (motions for reconsideration in criminal cases typically are evaluated under the standards for a motion to alter or amend judgment per Fed. R. Civ. P. 59(e)). Since Mr. Thompson's Motion invokes the compassionate release statute and does not address the reconsideration standard, the Court will assume for immediate purposes, *arguendo*, that compassionate release is applicable to his civil contempt incarceration.

The "extraordinary and compelling reasons" asserted in Mr. Thompson's Motion are framed around the COVID-19 pandemic and the elevated risks posed by his age, hypertension, and coronary artery disease. (*See generally* ECF Nos. 203 & 213). In the earlier stages of the pandemic, this Court, like many others, found that the risk of rapid transmission in prison facilities could constitute an "extraordinary and compelling reason" for inmates whose age or health left them particularly vulnerable to severe illness. *See, e.g.*, *United States v. Crawford*, 2020 WL 3869480, at *2 (S.D. Ohio July 9, 2020) (granting compassionate release to older inmate with diabetes and high blood pressure); *United States v. Glassburn*, 2020 WL 5366113, at *2 (S.D.

---

[2] Applying the bail factors, the Court noted Mr. Thompson's low danger to the community and acknowledged his argument "that his release would better allow him to comply with this Court's orders." (*Id.* at 5). Release was not warranted, however, because Mr. Thompson posed a flight risk and had not introduced sufficient evidence of his medical risk. (*Id.* at 5–8).

9

Ohio Sept. 8, 2020) (finding inmate's chronic obstructive pulmonary disease was an "extraordinary and compelling reason," but denying compassionate release because inmate would pose a danger to the community). The pandemic, however, has evolved in the time since Mr. Thompson's Motion was filed, and so too has the Sixth Circuit caselaw. In *United States v. Lemons*, the court held that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction," though the court did not foreclose relief for "a prisoner who is 'unable to receive benefit from a vaccine.'" 15 F.4th 747, 751 (6th Cir. 2021) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); and *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021)). *See also United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021). Then in *United States v. McKinnie*, the court reiterated that, given the availability of COVID-19 vaccines, the pandemic itself would not be considered an "extraordinary and compelling" reason, "absent extenuating circumstances." 24 F.4th 583, 588 (6th Cir. 2022).

While these decisions have not ended the availability of compassionate release due to COVID-19, they have narrowed it significantly. Relief could still be available, for example, to a defendant whose medical condition makes vaccination truly unsafe, or if new viral strains emerge that are highly vaccine resistant. Mr. Thompson's Motion, however, does not present such "extenuating circumstances." *Id.* Under the general rule of *Lemons*, *Traylor*, and *McKinnie*, the Court must conclude that "extraordinary and compelling reasons" are lacking. Even accounting for Mr. Thompson's age and comorbidities, his risk is reduced by the availability of vaccines, which remain effective at preventing the most serious COVID-19 cases. Since Mr. Thompson fails on this prong, the Court terminates its inquiry. *See Traylor*, 16 F.4th at 487. Mr. Thompson's Motion for Compassionate Release (ECF Nos. 203 & 213) is **DENIED.**

Of course, the narrowing of compassionate release due to COVID-19 does not change the Court's ability to find that a defendant's medical condition is "extraordinary and compelling," pandemic aside. *See, e.g.*, *United States v. Barrett*, 2022 WL 2964883 (S.D. Ohio July 26, 2022) (granting compassionate release to defendant with failing eyesight, diabetes, hypertension, chronic kidney disease, bowel issues, and PTSD); *United States v. Mellon*, 2022 WL 2704151 (S.D. Ohio July 12, 2022) (same, for defendant with chronic kidney disease requiring constant dialysis). The Court is aware of Mr. Thompson's health challenges;[3] therefore, this denial is **without prejudice** to refiling a subsequent compassionate release motion consistent with current Sixth Circuit precedent. Any such motion should address specifically whether compassionate release is available to an incarcerated civil contemnor.

### IV.  COMPLIANCE HEARING

Though the Court has not found sufficient merit in Mr. Thompson's motions, the Court does hold its own concerns about the duration of Mr. Thompson's incarceration. When the Court imposed its sentence in December 2015, it never could have anticipated this case would drag into 2022 without any substantial progress. Mr. Thompson now has been incarcerated for over six and a half years on his civil contempt sentence and has amassed a fine of approximately $2.5 million. Because the Court tolled its criminal contempt sentence, Mr. Thompson would have another two years of incarceration ahead even if he immediately purged himself of civil contempt.

The purpose of a civil contempt proceeding is "to secure compliance with judicial decrees." *United States v. Mitchell*, 556 F.2d 371, 383 (6th Cir. 1977) (internal quotation marks omitted). Given the length of Mr. Thompson's incarceration and the strong liberty interests at stake, a fresh

---

[3] Of note, the Court recently ordered medical testing related to Mr. Thompson's claimed ailment of "systemic exertion intolerance disease." (*See* ECF No. 232). The Court understands that testing is complete and that the results have been analyzed by an outside specialist. That analysis has not yet been tendered for the Court's *in camera* review.

11

look is warranted on whether the Court's civil contempt sanction remains calculated to procure compliance with the plea agreement. Accordingly, a hearing will be scheduled to evaluate *de novo* Mr. Thompson's present willingness and ability to purge himself of contempt.[4]

## V. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss Civil Contempt Charges (ECF No. 202) and Motion for Compassionate Release (ECF Nos. 203 & 213) are **DENIED**. Defendant's Motion for Enlargement of Time to Retain Counsel (ECF No. 234) is **DENIED AS MOOT** and Interested Party John Pidcock's three Motions for Joinder (ECF Nos. 206, 209, 219) are **GRANTED**. Mr. Thompson's Motion for Enlargement of Time to Retain Counsel and to Respond to Recovery Limited Partnership Trust Motion for Inspection and Custody of Property Seized from Defendant Thompson (ECF No. 239) is **GRANTED in part and DENIED in part**.

The Court sets a compliance hearing regarding Mr. Thompson's civil contempt, which will occur on a date to be determined.[5] Parties and counsel are to appear in Courtroom 1, Room 331 of the United States Courthouse located at 85 Marconi Boulevard, Columbus, Ohio.

IT IS SO ORDERED.

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: September 13, 2022**

---

[4] Though no decisions have been reached on whether the civil contempt sanction will be altered, the parties are advised to prepare for questioning on whether the incarceration has lost its coercive effect, whether alternative sanctions would be more or equally effective, and at what point continued incarceration would offend the Due Process Clause.
[5] This Court will issue shortly a hearing notice, setting forth the specific date and time of the compliance hearing.